ANDREW MURDOCK, Admr. *vs.* A. W. WASHBURN et uxor.

The distributees of an estate of a deceased person, are, under the probate laws of this State, entitled to distribution of the estate according to law, after the expiration of twelve months from the grant of letters of administration.

It is no bar to a petition for such distribution, that there are debts outstanding against the estate, or creditors of the estate, who claim to have a lien upon any or all the assets of the estate, for the payment of their demands.

In a controversy between the distributees and the administrator of an estate, the court can take no notice of, and predicate no action upon the rights of creditors not parties to the suit.

Where distribution of the estate of a deceased person is decreed, it is a condition precedent to the distribution, that the distributee execute a refunding bond with security, to refund a due proportion of the amount distributed, to meet any debts that may afterwards make their appearance and the costs thereon.

In decreeing the distribution of an estate of a deceased person, the party claiming distribution, is entitled to it, and if at all, immediately. It is error, therefore, for a court decreeing distribution, to permit the administrator " to retain the possession of the property for the purpose of gathering an ungathered crop."

ON appeal from the decree of the probate court of Yazoo county.

At the March term, 1842, of the probate court of Yazoo county, Asahel W. Washburn, and Leonora his wife, filed their petition, setting forth that, in the year 1831, John Martin died intestate, in that county, possessed of a large amount of personal property, consisting of negroes principally.

That the only heirs at law of said John Martin were Rhoda, Joseph and Adeline Martin, and Leonora Martin, one of the petitioners, who had intermarried with her co-petitioner, Asahel W. Washburn; that in the year 1832, William A. Baughan became administrator upon the estate of John Martin, and continued to administer for two years; that in 1834, John Alston became administrator *de bonis non,* and remained as such until 1838, when he surrendered the administration, leaving the estate greatly indebted; that in 1838 the probate court of the

county, granted letters of administration *de bonis non*, to one William Phillips, who took possession of the real estate of his intestate, which had descended to the heirs at law of Martin, and contrary to law commenced cultivating the land with the personal estate, and continued until the February term, 1841, of the probate court, when he surrendered his letters, and left the estate unrepresented, unsettled and undivided. That being interested in the estate, and for the purpose of having its affairs closed, and the property divided, Asahel W. Washburn, one of the petitioners, in May, 1841, took out letters *de bonis non*, upon the estate.

That he found at the time, a growing crop on hand, on the land above spoken of, which he cultivated and gathered for the benefit of those in interest, which, having accomplished, he desired the estate to be divided; that there were no outstanding debts contracted by John Martin in his lifetime, which had come to their knowledge; that if any existed, they were barred by the statute of limitations; that if any debts existed at all affecting the estate, they had been contracted by the previous administrators, for which they were at law, personally bound, and not the estate of their ancestor; that it was expensive and not for the interest of the heirs and distributees to keep the estate together; that Joseph and Adeline Martin were infants without guardians; the petition prayed for a distribution, and division of the property according to law.

At the June term, 1842, the petitioners filed an amended petition, which recited the death of Rhoda Martin, without will; that William Phillips had been appointed guardian of Joseph and Adeline Martin; that since the filing of their original petition, Asahel W. Washburn, one of the petitioners, had resigned his office as administrator, and that Andrew Murdock, had qualified in his stead, and neglected and refused to distribute the estate according to law; and concluded with a prayer for distribution, and that Murdock might be made a defendant, &c.

At the September term, 1842, Andrew Murdock filed his separate answer to these petitions.

He admitted the death of John Martin, the heirship of the

petitioners and other distributees, and the various administra-
tions, which had been granted upon the intestate's estate, as set
forth in the petition.   He admitted that there were no outstand-
ing debts of John Martin, so far as he knew, but that his admin-
istration had been of short duration, and such debts might exist.
He stated, that there were debts, however, to the amount of
six or seven thousand dollars, against the estate, contracted
by the several administrators, his predecessors, now remaing un-
paid, which he insisted were a charge upon, and should be satis-
fied out of the estate ; that several of his predecessors, who
had contracted these debts, were now dead and their estates in-
solvent, and that the debts had been contracted on account of
and for the benefit of the estate ; that his predecessors, with the
consent of those interested and the sanction of the court, and
without objection from any source, had cultivated the land of
his intestate with his slaves, and that he was following in their
footsteps, and submitted to the court whether his action was
legal ; that there were crops of corn and cotton ungathered, up-
on the estate, which would be lost if a distribution was then
decreed ; that it was greatly for the interest of the petitioners
and the other distributees, that a distribution should not at this
time take place ; should, however, a distribution be ordered, he
insisted that bond and security should be given, by each of the
persons entitled to distribution, to refund a due proportion of
whatever debts might afterwards appear against the estate and
the costs attendant on their recovery ; this answer was also
made a cross bill.

*Messrs J. & W. Battaile* were counsel for the defendant in
the court below.

The petitioners, by *W. E. Pugh*, their solicitor, demurred to
the cross bill.

The court decreed, that distribution be made,according to the
prayer of the petitioners, and appointed commissioners to carry
the distribution into effect.   It permitted, however, the defend-
ant to retain the possession of the property, for the purpose of
gathering the then ungathered crop, until the first day of Janu-
ary, 1843, and no longer.

From this decree, Murdock prosecutes this appeal.

*R. S. Holt*, for appellant.

This cause is here on the appeal of Murdock from a decree of the probate court of Yazoo county.

Appellees by petition asked a decree of the probate court, directing appellant to make distribution of the estate of John Martin, of which he is administrator, *de bonis non*, and of which they claim a distributive portion. Appellant in his answer, which he made a cross bill, stated that he had been preceded in the administration of said estate, successively by W. A. Baughan, John Alston, William Phillips, and said Washburn; that there were outstanding and chargeable on said estate, six or seven thousand dollars of debts contracted by his said predecessors in said administration, " on account of and for the benefit of said estate." To this answer and cross bill appellees demurred, and thereby admitted the truth of its allegations. The demurrer was by the court sustained, and distribution decreed, without a refunding bond being required.

Two questions are thus made:

1. Were said outstanding debts a bar to the distribution decreed ?

2. Should the court have required a refunding bond of the distributees ?

As it is only the balance of an estate after the payment of all debts, and all the expenses of administration, which can be distributed, How. & Hutch. 394, and as the decree of the court is general for the distribution of all the estate, it must have been predicated on the notion that the outstanding debts described in the cross bill are not in fact chargeable upon, and payable out of the assets of said estate.

The assets in the hands of an administrator on familiar principles, constitute a trust fund. It is believed to be a sound, general rule, that a trustee may, when necessary, contract debts on account and for the benefit of the trust estate, and that those debts will operate as a charge on the trust fund, in the hands of his successors. *Maywood* v. *Johnson*, 1 Hill R. 230-1-2-3-4. 4 Dessaus. 19. Ib. 591.

This is a rule which pertains in equity, and is founded on the

manifest equity of him who has advanced the means of protecting or benefitting a trust estate to be indemnified out of that estate.

The cross bill alledges, and the demurrer admits, that these debts were contracted "on account and for the benefit of the estate," and the presumption of law is, that the administrators acted within the scope of their powers, and contracted such debts only as were necessary.

The debts could therefore be inforced in equity against the appellant as administrator.

But supposing the estate not directly bound by the contract of the administrators, it certainly is indirectly.   The administrators having expended this amount, or become liable for it for the benefit and on account of the estate, or in the course of its administration, may, in equity, demand payment or satisfaction out of the assets in the hands of appellant.   How. & Hutch. 394.   22 Law Library, 230–31.   Top. p. 453–4–5, margin.

But there is yet another doctrine by which this estate is clearly chargeable, with the demands of those who advanced to its administrators their property, money or labor, in confidence that they would be repaid or compensated out of the estate which they were benefitting.

It is the doctrine of subrogation.   The principle deducible from the books is that, where one has borne a burden which should have been borne by another, he shall be substituted for his indemnity to all the rights and remedies of that other.   See 2 Tuck. Com. 483–4.   Rand. 444.   2 How. 813.   10 Peters, 567. 2 Leigh, 70.   2 J. C. R. 612.

The assets of the estate being already chargeable in favor of the administrator for the amount of these outstanding debts as for expenses incurred in the course of administration; the merchants by whom the negroes of the estate were fed and clad, and its cotton prepared for market; the physician by whom its slaves were tended; and the overseers by whom their labor was directed ; while the proceeds of the property were being appropriated in payment of the old debts of John Martin, would unquestionably be subrogated in chancery to the right of the admin-

istrators with whom they contracted, to be paid out of the assets.

In every view, therefore, these outstanding debts were chargeable upon the assets in the hands of appellants, and the court manifestedly erred in sustaining the demurrer, and decreeing distribution.

On the second point there is even less doubt. The statute dispenses with a refunding bond in no case.

The fact that no outstanding debts are known to remain unpaid, does not obviate the necessity of it, because the bond is, in fact, in terms intended, as an indemnity against such unknown debts. H. & H. 406.

*W. E. Pugh*, for appellee.

This cause comes up upon demurrrer, to the answer and cross bill of the defendant.

If the defendant, in his answer, has not denied any of the allegations, or in his cross bill, made any charges sufficient to bar the complainants of distribution as prayed for in the bill, then the decree of the court below, in sustaining the demurrer of the complainants, must be sustained. But if, by his answer, he has denied the material facts of the bill, or in his cross bill, made charges sufficient in law to bar the complainants of a recovery, (if true,) then the court below erred in sustaining the complainant's demurrer. The decree should be set aside, demurrer overruled, and the cause remanded for further proceedings.

I suppose the defendant thinks to sustain his position upon two grounds.

1. That there are outstanding debts contracted by the administrators, as such, who preceded him. And,

2. Because the complainants have not tendered to him a refunding bond.

To the first objection, I ask, what has the defendant, as administrator *de bonis non*, or the distributees of John Martin, to do with debts wantonly and fraudulently contracted in the name of the estate by any man or set of men who may have preceded

him in the administration? I answer, nothing. The duties of an administrator are to collect the effects of his intestate, pay his debts, and pay over the balance in his hands to those entitled to receive it; and the duty of an administrator *de bonis non*, is to administer the goods of the intestate left unadministered by the administrator; when this is done, his powers end. But here is an attempt made by the defendant to hold in his hands the effects of an estate, contrary to the wishes of those entitled to them, after the estate has been in administration more than ten years, upon the pretence of paying (or holding to pay) the debts of his predecessors, contracted in fraud and violation of all law.

If in equity the estate is bound for these debts, it can only be to those who contracted them, (which I must deny,) yet it is a matter solely between them and the distributees, and with which the present administrator *de bonis non*, has no concern. John Martin never contracted these debts; and if the defendant were to pay them out of the assets of the estate in his hands, he could protect himself neither at law or in equity in so doing. Neither can those holding these claims or the persons who contracted them, subject the estate to the payment of them; at least, not until they have shown they were contracted not only in good faith and with an intention to benefit the estate, but that the estate was actually benefitted thereby, and that they were contracted in the due administration of the estate, and also *ex necessitate rei.*

If an administrator either travels out of the true line of his duty, or by covin or fraud contracts debts in the name of his intestate's estate, neither a court of law or equity will protect him; and why? because it would not only license every man acting in a fiduciary capacity, to use the trust funds for his own benefit and to the injury of the beneficiaries, but would open wide the door to fraud and perjury. I hold that in every case where an administrator wishes to contract a debt in the name and for the benefit of the estate, he should first apply *to* a court of equity to grant him the powers; and nothing less than a decree of a court, having competent jurisdiction of the

matter, (where all interested may be heard,) can protect him. But suppose I carry this position too far, and am not borne out by the judicial decisions of the country? it will not effect the cause at bar. What, I ask again, has the defendant to do with the actings and doings of those who have gone before him? His duty lies with the creditors of his intestate, and those entitled to the balance in his hands after the creditors are satisfied, and with none else; and I think this court has decided as much in the case of *Prosser* v. *Yerby's* executrix, in 1 How. R. 68.

It is clear, that no administrator can, by his contract, bind his intestate's estate in his hands. Then can it be contended, that by his contract he can bind the estate in the hands of the administrator, *de bonis non;* yet such must be the law before the defendant can sustain the position he has assumed. *Barker* et al. executors v. *Parker,* 1 Term Rep. 295. *Foster* v. *Fuller,* 6 Mass. R. 58. *Sumner,* administrator v. *Williams* et al. 8 Mass. R. 199.

Will the second objection avail the defendant? I think not. If I have not misunderstood this court, the point was decided against the defendant; in the case of *Harmon* v. *Thompson,* 2 How. R. 810, this court in that case said, "that after payment of debts, &c., the surplus shall be decreed by the orphan's court to the persons entitled to distribution thereof. It would be the duty of the administrator to distribute according to such, and perhaps an averment that he had failed to do so, would also enable the party suing to recover." It is true, the complainants have not made in their bill a tender of a refunding bond, yet they are willing to give it, if, in the opinion of the court, (under all the charges therein named) the law imposes such a condition on them. Neither do they say, in so many words, that the estate has been settled, but they do say so in substance and in effect.

The bill charges, that the estate of John Martin has been in administration for ten years, and that there is at this time no outstanding debts contracted by John Martin, the intestate; both of which allegations are admitted in the answer of the defendant. The law requiring the legatees and distributees to give bond, was intended only to protect the admininistrator

against the debts of the intestate, which may be unpaid at the time of distribution made. If, therefore, there be no liability or outstanding debts, the administrator requires no protection; the law must be so construed, " If settlement be made, no bond shall be required." The payment of all the debts of the intestate is a settlement in contemplation of law. If such be not the law, the administrator might refuse a settlement, (as in this case) and those entitled to distribution might be unable to give the bond required by the administrator; for it appears from the reading of the statute, he is to be the judge of the sufficiency of the bond; and thus he might retain the estate at his own will.

For what are the complainants in this case contending? Only to get from the hands of the administrator their rights, to wit: the personal estate in specie, which has been withheld from them for ten years.

In this case the ends for which letters of administration were granted, have all been accomplished. The assets have been collected; the debts have been paid, and the administrator holds the residue against the will of those entitled to it; and for what, but to subserve his personal interest? But suppose there should be outstanding debts contracted by the intestate? can the defendant be in any danger from them, at this late date? I think not. The statute bars all claims against the estates of decedents after three years from the granting letters of administration, upon the administrator's giving proper notice to creditors to present them, &c. This the law will presume to have been done after a lapse of ten years, upon the principle (*if no other*) that every public functionary or other person, acting under the solemnity of an oath, is presumed to do what the law requires of him, until the contrary be shown. If the notice required has not been given in this case, the defendant, in his cross bill, should have charged it, and called on the complainants to prove it. His silence upon this point, is an admission of the facts, when the complainants expressly alledge, that if there be any debts of John Martin yet unpaid, they are barred by the statute of limitations. But suppose it was established that publication, as required, had never been made? does it change the condition

of the defendant? It does not. Six years bars accounts and promissory notes against living men, and will also against the estates of dead men. The same length of time after letters granted, bars the revival of a judgment by *sci fa* against administrators. Then place the defendant in the most favorable position the facts in this case will bear, and he is still contending without law, equity or good conscience to support him.

Mr. Justice THACHER delivered the opinion of the court.

This cause appears here by appeal from the decree of the probate court of Yazoo county.

A petition was filed to the March term, A. D. 1842, of the probate court of Yazoo county, by the appellees, Asahel W. Washburn and Leonora, his wife, claiming their distributive share of the estate of John Martin, late of said county, who deceased, intestate, sometime in the year 1831, leaving, with others, the said Leonora his heir at law. The petition represented that the said estate had passed through the hands of an administrator, and several successive administrators, *de bonis non*, and at the date of the filing of said petition, was represented by the said Asahel W. Washburn, as administrator, *de bonis non*, and remained unsettled. The petition continued in said court unanswered and without judgment thereon, until the June term thereof, A. D. 1842, when the appellees filed their amended petition, containing, among other new allegations, the statement that the said Asahel W. Washburn, the administrator, *de bonis non*, aforesaid, since the filing of the original petition in said cause, had resigned his office of administrator, as aforesaid, of said estate, and that one Andrew Murdock, the appellant, had been appointed and qualified in his stead. To the original and amended petitions, the defendant below filed his answer, in the nature of a cross bill, and set forth that his predecessors in the administration of said estate, had contracted debts in the discharge of their office, to the amount of six or seven thousand dollars, which he viewed as claims upon the assets of said estate, and insisting that if the court below granted the prayer of the petitions, it should require of the distributees in said peti-

tion, to give the refunding bond, as described in the statute of distribution.   To this answer and cross bill, appellees demurred, which demurrer was sustained by the court below, and a decree of distribution made, but reserving to appellant the privilege of holding possession of the property of said estate, until the 1st of January, 1843, for the purpose of getting the then growing crop.

The foregoing narrative of facts calls for an opinion upon the rights of the distributees of an estate under administration, the position of administrators pending a petition for such distribution, and the duty of a probate court in decreeing such distribution.

A statute of this State, (see How. & Hutch. 406, § 70,) makes it imperative upon a probate court to grant a rule on an administrator, to make distribution of an intestate's estate, according to law, any time after the expiration of twelve months from granting letters of administration on such estate, upon the petition of any person entitled to distribution.   It clearly appears from the record, that many years had elapsed since the grant of letters in the estate in question, and likewise that appellees were persons entitled to distribution.

Now this court will not undertake to say whether the creditors before spoken of, have or not, in whole or in part of their demand, a claim upon any portion of the assets of said estate. Those creditors are not here represented, and the character of of their claim is heard of alone from the administrator *de bonis non*, and some of the distributees of the estate whose interest it is not to represent, or who may not understand their claims as possibly they may exist.   Neither contingency can affect this decision.

We have seen that after the expiration of twelve months from the grant of letters of administration, the law permits and makes it incumbent on the probate court to compel the distribution of the estate to the persons entitled and praying for the same.   But for the protection of creditors, as well as the administrator of the estate, it prefixes the condition that any such distributee shall enter into bond and security, conditioned to refund a due pro-

portion of such distribution, to meet any debts of intestate that might subsequently make their appearance, and the costs thereon. The law, in no case, dispenses with bond of this kind, up to the period of the final settlement of the estate. Upon a final settlement of an estate, the necessity of such security ceases, and it is no longer required. Neither the administrator nor the distributees, nor the probate court, can be allowed to judge of that necessity or its probability, because the law has assumed to itself to fix a termination of that necessity, and has not stopped short of the final settlement of an estate. The language of the seventy-first section of How. & Hutch. Dig. p. 406, shows plainly this intention. It explains, if such were necessary, the antecedent section, number seventy. "Provided," it says, "that nothing herein contained shall be so construed as to compel any distributee to give bond," &c., "after a final settlement," &c., evidently demonstrating that in cases of distribution under any other circumstances, such bond shall be compelled to be given. Such bond and security being, then, a prerequisite, a condition precedent to distribution of an estate not finally settled, it must be embraced in a decree of the same. In the case under contemplation, a decree to this effect does not appear.

In another point of view, the decree of this record steps too far, and, as it works a prejudice upon the rights of distributees, we therefore notice the error. The court below added, "and it is further ordered and decreed, that the said Murdock be permitted to retain the possession of said property, for the purpose of gathering the present ungathered crop, until the 1st day of January, 1843, and no longer," &c. If the appellees were entitled to their distribution at all, they were entitled to it without delay. The "crop growing at the time of" the intestate's decease, and "the slaves employed in such crop," are exempted from sale and division, under the circumstances enumerated in the sixty-third section of How. & Hutch. Dig. p. 402; but this record shows the reverse; that the crop mentioned in the decree, was not growing at the time of the decease of the intestate in question.

The statutes of this State, bearing upon the estates of decedents and the probate court, encourgage a final settlement of

Murdock, Admr. *v.* Washburn et uxor.

such property with all deliberate speed.   While delay might operate advantageously in an individual instance, as a rule, it would trench seriously upon the rights of heirs and distributees.

The decree of the court below, though right in sustaining the demurrer to the answer and cross bill of the appellants, is, nevertheless, defective and erroneous in not requiring from the appellees the bond and security to refund a ratable proportion of the distribution decreed, to meet any debts of intestate, which might thereafter make their appearance, and the costs thereon, and in permitting the appellant to retain the possession of the property of the estate, so far as decreed in distribution, until the 1st of January, 1843.

The judgment of the court below is therefore reversed to the extent above expressed, and the cause remanded for the further action of said court.